## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Jane Doe, and Individual,      ) | |
|               ) | |
|         **Plaintiff,**      ) | |
|               ) | |
| vs.               ) | |
|               ) | |
| **State of Oklahoma ex rel.,**    ) | |
|               ) | |
| **THE BOARD of REGENTS for the** ) | |
| **UNIVERSITY OF OKLAHOMA**, ) | |
|               ) | Case No.CV-01160-J |
| **DAVID A. SURRATT**, in    ) | |
| his individual and official Capacity as ) | |
| Vice President of Student Affairs and ) | |
| Dean of Students,         ) | |
|               ) | |
| **KALYN CAVAZOS**, in her    ) | JURY TRIAL DEMAND |
| individual and official capacity as ) | ATTORNEY LIEN |
| Director of Student Conduct and ) | |
| Assistant Dean of Students AND, ) | |
|               ) | |
| **TERRY SCHOFIELD**, in his   ) | |
| individual capacity,       ) | |
|               ) | |
|        **Defendants.**    ) | |

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Jane Doe, by and through undersigned counsel, respectfully moves this Court for a **Temporary Restraining Order** pursuant to **Rule 65 of the Federal Rules of Civil Procedure**. Immediate injunctive relief is necessary to prevent irreparable harm to Plaintiff's constitutional rights and future medical career while this action is pending. In support, Plaintiff submits the following brief.

## BRIEF IN SUPPORT

### I. Background

1

As detailed in the Complaint, Plaintiff, a fourth-year medical student in good academic standing at the University of Oklahoma Health Sciences Center, was suspended for one year based on statements she made during a confidential 988 Suicide and Crisis Lifeline call.

The University's disciplinary action punished Plaintiff's **protected speech**, disregarded fundamental **due process**, and constituted **disability discrimination** in violation of **Section 504 of the Rehabilitation Act**.

As relevant to her request for emergency relief, Plaintiff's ability to apply for residency—a necessary step to becoming a licensed physician—has been effectively destroyed by Defendants' actions.

Because the underlying disciplinary record remains active, Plaintiff has been forced to delay submitting her residency application. Applications open in late September, and most interviews are filled by mid-October. Each passing day irreversibly damages her standing in the national Match process and threatens to permanently bar her from the medical profession.

At least in regard to Plaintiff's First Amendment claim and vagueness claim, there are no issues of material fact which need to be determined by the court for liability because everything which Defendants did and the speech which they based their actions upon is transcribed from the University panel hearing. These claims thus present a pure question of law which provides the court with greater confidence that if it grants a Temporary Restraining Order, that decision will not likely be affected by the consideration of any additional facts.

## II. Legal Standard

A temporary restraining order is warranted when the movant demonstrates:

1. **A likelihood of success on the merits;**

2. **Irreparable harm in the absence of relief;**

3. **That the balance of equities tips in the movant's favor; and**

4. **That an injunction is in the public interest**. See *Winter v. NRDC*, 555 U.S. 7 (2008); *Planned Parenthood of Kan. & Mid-Mo. v. Andersen*, 882 F.3d 1205 (10th Cir. 2018).

### III. Argument

### A. Likelihood of Success on the Merits

Plaintiff is likely to prevail on her First Amendment claim, as her statements did not constitute "true threats" under *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). Deputy Chief Schofield admitted that Plaintiff's words were free speech and not a crime. The Hearing Panel itself found no compelling evidence to believe that Plaintiff ever used or even implied the word "kill" at any time. *See* Ex. 19 of Complaint. Defendants also punished Plaintiff for her speech even though she had no subjective recklessness mens rea as required under Counterman. *Counterman v. Colorado*, 600 U.S. 69, 79 & n.5. Defendants found Plaintiff in violation of a Rule which was too vague to give Plaintiff any notice that her confidential statements to 988 in seeking mental health counseling could be considered a violation of the Student Code, which is in violation of Plaintiff's due process right to fair notice. Defendants' actions also violated her procedural due process rights by relying on hearsay, denying cross-examination, and allowing conflicted administrators to participate. Additionally, Plaintiff was penalized for disability-related manifestations of mental health conditions, in violation of Section 504 of the Rehabilitation Act.

### B. Irreparable Harm

Plaintiff's affidavit, executed October 10, 2025, demonstrates that she faces **imminent and irreparable harm** to her career if relief is not granted.

Plaintiff is a fourth-year medical student in good standing at the University of Oklahoma. To practice medicine in the United States, she must obtain a residency through the **National Resident Matching Program ("the Match")**. Without a residency, her M.D. degree cannot lead to board certification or licensure. *See* Exhibit 1 (Plaintiff's Affidavit).

The Match is intensely competitive. In 2025, over **52,000 applicants competed for about 43,000 positions**. *See* Tanya Albert Henry, *Biggest Match Day Ever: Here's What the 2025 Numbers Reveal*, **Am. Med. Ass'n** (Mar. 21, 2025), https://www.ama-assn.org/medical-students/preparing-residency/biggest-match-day-ever-here-s-what-2025-numbers-reveal (last visited Oct. 10, 2025). Applications open in late September, and the majority of interview slots are filled by mid-October. *See* Exhibit 1 (Plaintiff's Affidavit).

Because of the University's disciplinary record, Plaintiff must answer "yes" to a required professionalism disclosure in the ERAS (Electronic Residency Application Service) application, automatically flagging her file for exclusion. *Id*. Program directors routinely screen out such applications without review, and any allegation implying a threat of violence permanently destroys credibility in medicine. *Id.*

If Plaintiff delays the application for matching until the resolution of this pending litigation, the resulting gap in her training will appear in her Dean's Letter and or her ERAS application and reduce Plaintiff's likelihood of matching. *Id; See* Exhibit 2 (2026 ERAS Applicant Worksheet 4-10-25).

If Plaintiff delays graduation to await resolution of this pending litigation any resulting additional gaps due to this will appear in her Dean's Letter further prejudicing her application. *See* Exhibit 1 (Plaintiff's Affidavit); *See* Exhibit 3 (Dean's Letter).

Medical School is a four (4) year program and given Plaintiff's current situation if this

Temporary Restraining Order is not granted, she would take six (6) or more years to complete the four (4) year program further minimizing her chance of being matched. *See* Exhibit 1 (Plaintiff's Affidavit); *See* Exhibit 2 (2026 ERAS Applicant Worksheet 4-10-25); *See* Exhibit 4 (National Resident Matching Program 2025 Results and Data).

If Plaintiff graduates on time currently as a fourth (4th) year student but delays applying to residency pending resolution of this matter, the graduation month and year—which must be listed in every ERAS application—will reflect a gap in training, past graduation, and reduce the likelihood of her matching probability from approximately 93.5% to 45.9%, with further decline each subsequent year. *See* Exhibit 1 (Plaintiff's Affidavit); *See* Exhibit 4 (National Resident Matching Program 2025 Results and Data).

As of **October 10, 2025**, Plaintiff has not submitted an application for fear of incurring this permanent injury. Each passing day increases the chance that she will be unable to match in this cycle, effectively ending her ability to ever practice medicine. *See* Exhibit 1 (Plaintiff's Affidavit). This harm is permanent, non-speculative, and not compensable by money. Once the Match cycle passes or the disciplinary record circulates to medical schools, Plaintiff's reputation and eligibility are irretrievably lost.

Courts have consistently held that violations of constitutional rights—including free speech and due process—constitute irreparable injury. Moreover, the chilling of Plaintiff's willingness to seek mental health care is an ongoing injury. Serious long-term damage to career prospects can count as irreparable harm. See *Kamdem-Ouaffo v. Task Mgmt. Inc.*, 792 F. App'x 218, 222 (3d Cir. 2019) (citing *Morton v. Beyer*, 822 F.2d 364, 372 n.13 (3d Cir. 1987); *Acierno v. New Castle Cnty.*, 40 F.3d 645, 654 (3d Cir. 1994); see also *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 89 & n.16 (1981); *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1055-

56 (5th Cir. 1997); *NAACP, Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995).

As for the harm to Plaintiff's reputation, "[i]njury to reputation . . . is not easily measurable in monetary terms, and so often is viewed as irreparable." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948.1 (4th ed. 2025). Because reputational injury cannot easily be compensated through money damages, it also counts as irreparable harm. See, e.g., *Guardian Life Ins. Co. of Am. v. Est. of Cerniglia, 446 F. App'x 453, 456 (3d Cir. 2011)*; *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998); accord, e.g., *Life Spine, Inc. v. Aegis Spine, Inc*, 8 F.4th 531, 546 (7th Cir. 2021); *Register.com., Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004); *Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 178–79 (3d Cir. 2008). And it is well established that "the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion).

## C. Balance of Equities

The balance of harms overwhelmingly favors Plaintiff. Without immediate relief, she faces permanent exclusion from her profession. Defendants, by contrast, suffer no cognizable harm if ordered to treat Plaintiff as a student in good standing while this case proceeds. Enforcement of an unconstitutional policy cannot be a legitimate governmental interest. *See A.C.L.U. v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003).

Also, the Defendants can have little or no interest in applying the relevant underlying Student Code section in an unconstitutional way. See *A.C.L.U. v. Ashcroft,* 322 F.3d 240, 251

n.11 (3d Cir. 2003), aff'd and remanded, 542 U.S. 656 (2004) ("[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law."). This is because "enforcement of an unconstitutional law is always contrary to the public interest." *Karem*, 960 F.3d at 668 (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)). Further, "the government 'cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required.'" *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 85 (D.D.C. 2020) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015))); *Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10, 34 (D.D.C. 2021) (concluding that when balancing the equities of unlawful governmental conduct, "any hardship" that the government might identify "is not legally relevant").

And "[w]hen a plaintiff is claiming the loss of a First Amendment right, courts commonly rule that even a temporary loss outweighs any harm to defendant and that a preliminary injunction should issue." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948.2 (3d ed. 2025) (citing *Ramirez v. Collier*, 595 U.S. 411, 433 (2022); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020); *Yang v. Kosinski*, 960 F.3d 119, 136 (2d Cir. 2020); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007)); accord *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022).

## D. Public Interest

It is always in the public interest to prevent violations of constitutional rights. Protecting students' ability to seek mental health support without fear of punishment likewise serves the broader public interest. "[T]he public has no interest in the enforcement of what is very likely an unconstitutional statute." *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d

1268, 1290 (11th Cir. 2013); accord, e.g., *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 128–29 (3d Cir. 2023); *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010). And on the other side of the ledger, there is a chilling effect on speech. See *Amalgamated Transit Union Loc.* 85, 39 F.4th at 109 ("There is a strong public interest in upholding the requirements of the First Amendment. And, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.") (cleaned up).

## IV. Relief Requested

For the foregoing reasons, Plaintiff respectfully requests that the Court issue a **Temporary Restraining Order**:

1. **Enjoining Defendants** from enforcing Plaintiff's suspension or otherwise treating her as having engaged in "threatening behavior" under the Student Code;

2. **Requiring Defendants** to reinstate Plaintiff to full academic standing, to remove any references to the "suspension" or alleged "threatening behavior" from her records including but not limited to her Official Transcript and MSPE/Dean's Letter, allowing Plaintiff to complete the ERAS application process immediately without requiring her to make a professionalism disclosure of any disciplinary action or allegation of threat of violence and instead allowing Plaintiff to state she took a personal leave of absence during the suspension period, pending resolution of this case;

3. **Prohibiting Defendants** from further retaliating against Plaintiff for her protected speech and disability-related manifestations during the pendency of this action; and

4. **Granting such further relief** as the Court deems just and proper.

Respectfully submitted,

s/ Rand C. Eddy
OBA# 11822
Eddy Law Firm, P.C.
*Attorney for Plaintiff and Participating*
*Attorney for The Rutherford Institute*
3644 Rolling Lane Circle
Midwest City, Oklahoma 73110
Tel: (405)203-6675
rand@eddylawok.com


s/ Sawmon Y. Davani
OBA# 34515
Davani Law, PLLC
*Attorney for Plaintiff and Participating*
*Attorney for The Rutherford Institute*
2405 White Oaks Drive
Norman, OK 73071
Tel: (405) 414-5913
Facsimile (972) 584-1599
sawmon@davanilawpllc.com