**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MEGAN HSIEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:25-cv-01160-J |
| | ) | |
| STATE OF OKLAHOMA, *ex rel*., | ) | |
| THE BOARD OF REGENTS FOR THE | ) | |
| UNIVERSITY OF OKLAHOMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO RECONSIDER ORDER DENYING PRELIMINARY INJUNCTION

Dated: April 10, 2026

Rand C. Eddy, OBA# 11822
Eddy Law Firm, P.C.
*Attorney for Plaintiff*
Participating Attorney for
The Rutherford Institute
3644 Rolling Lane Circle
Midwest City, Oklahoma 73110
Tel: (405) 203-6675
rand@eddylawok.com

AND

Sawmon Y. Davani, OBA# 34515
Davani Law, PLLC
*Attorney for Plaintiff*
Participating Attorney for
The Rutherford Institute
2405 White Oaks Drive
Norman, OK 73071
Tel: (405) 414-5913
Facsimile (972) 584-1599
sawmon@davanilawpllc.com

# Table of Contents

Introduction ........ 1

Argument ........ 3

I. The Court must make additional findings and rule on whether Plaintiff's primary argument that her statements were not true threats is likely to succeed on the merits. ........ 3

II. The Court must reconsider and amend its findings and ruling on whether Plaintiff's secondary argument is likely to succeed on the merits. ........ 4

a. The Court cannot raise arguments *sua sponte* on behalf of Defendants. ........ 5

b. The two grounds this Court relied upon were not raised by Defendants and are therefore deemed waived. ........ 8

c. The two grounds which the Court raised *sua sponte* and relied on without the benefit of briefing do not indicate or establish that Plaintiff is not likely to succeed on the merits. ........ 11

i. The Plaintiff's comment about having "harmful thoughts" does not indicate or establish a reckless *mens rea*. ........ 11

ii. *Tinker* does not apply to Universities, and even if *Tinker* did, there was no substantial disruption in this case. ........ 13

III. The Court should reconsider and alter or amend its findings on the third and fourth preliminary injunction factors if Plaintiff is likely to succeed on the merits. ........ 17

Conclusion ........ 18

# Table of Authorities

### *Cases*

*Beckham Cnty. Rural Water Dist. No. 3 v. City of Elk City*, No. CIV-05-1485-F, 2014 WL 12818160 (W.D. Okla. Mar. 28, 2014) ........ 8

*Briscoe v. LaHue*, 460 U.S. 325 (1983) ........ 8

*Clark v. Sweeney*, 146 S.Ct. 410 (2025) (per curiam) ........ 5, 6, 8

*Counterman v. Colorado*, 600 U.S. 66 (2023) ........ 1, 3, 11

*Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) ........ 17

*Fox v. Washington*, 949 F.3d 270 (6th Cir. 2020) ........ 10

*Hardeman v. City of Albuquerque*, 377 F.3d 1106 (10th Cir. 2004) ........ 8

*Healy v. James*, 408 U.S. 169 (1972) ........ 14

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) ........ 17

*Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407 (2022) ........ 9, 10, 12

*Lavine v. Blaine School Dist.*, 257 F.3d 981 (9th Cir. 2001) ........ 16, 17

*Mahanoy Area Sch. Dist. v. B. L.*, 594 U.S. 180, 141 S.Ct. 2038 (2021) ........ 7, 14, 15, 16

*Olivier v. City of Brandon*, 607 U.S. ___, 2026 WL 783725, No. 24-993 (Mar. 20, 2026) ........ 14

*Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243 (10th Cir. 2024) ........ 17

*Slaughter v. Brigham Young Univ.*, 514 F.2d 622 (10th Cir. 1975) ........ 7

*Thompson v. Ragland*, 23 F.4th 1252 (10th Cir. 2022) ........ 14, 16

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ........ 7, 9, 10, 13, 14, 15, 16

### *Rules*

Fed. R. Civ. Pro. 52(a)(2) ........ 2, 4

Fed. R. Civ. Pro. 52(b) ........ 2, 4

Fed. R. Civ. Pro. 59(e) ........ 2, 4

***Other Materials***

*Thompson v. Ragland*, No. 21-1143, 2021 WL 2521636 (10th Cir. June 10, 2021) (Appellant's Opening Brief) .......... 14

## **Introduction**

Plaintiff filed a Motion for Preliminary Injunction to have Defendants remove and not report her disciplinary record and suspension so that she can apply to match with residency programs without irreparably damaging her reputation and harming her chances of obtaining a match, especially a desirable one. [Doc. 43]. Briefs were submitted by the parties [Doc. 44, 45, 46]. This Court graciously issued a ruling within the relatively short timeframe requested by Plaintiff, but denied Plaintiff's Motion for Preliminary Injunction. [Doc. 48]. Even though the Court found that the Plaintiff was "not entitled to a presumption of irreparable injury," the Court still found that Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief. [*Id.* at 7-9]. However, the Court denied the preliminary injunction because it found that Plaintiff was not likely to succeed on the merits because (1) a statement Plaintiff made to the 988 mental health crisis line "calls into question whether she possessed the requisite intent" for punishing true threats, and (2) "Plaintiff's speech caused tangible disruption." [*Id.* at 6-7]. Largely because the Court found Plaintiff was not likely to succeed on the merits, it also found that the balance of equities and public interest favors the Defendants. [*Id.* at 9-10].

In considering Plaintiff's likelihood of success on the merits, the Court only addressed "whether the Defendants can show Plaintiff's subjective mental state was reckless," as required under *Counterman v. Colorado*, 600 U.S. 66, 69, 77–79 (2023). [Doc. 48 at 5-7]. But the Court did not make any findings or conclusions as to Plaintiff's primary argument[1] that her statements did not constitute true threats at all—which is a completely separate and independent ground upon which

[1] Referred to as Plaintiff's "primary argument" simply because she raised those grounds first in her brief, and to help distinguish it from her other "secondary argument" on her mental state.

Plaintiff's First Amendment claim can prevail. [Doc. 44 at 7-11]. Plaintiff therefore requests pursuant to Rules 52(a)(2), 52(b), and 59(e) of the Federal Rules of Civil Procedure that this Court make additional findings that Plaintiff is likely to succeed on the merits of her primary argument that her statements did not constitute true threats.

Additionally, the two grounds this Court gave for finding that Plaintiff was not likely to succeed on the merits of her secondary argument—that Defendants cannot show Plaintiff's subjective mental state was reckless, as required under *Counterman*—were never raised by Defendants, and thus those two issues were never briefed by the parties. It was therefore improper to rely on those grounds (Plaintiff's statement to 988 and the "disruption") to find that the Plaintiff was not likely to succeed on the merits, and the Court was not fully informed of those grounds in making its ruling. Plaintiff therefore requests pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure that this Court amend its findings to instead find that the Plaintiff is likely to succeed on the merits of her secondary argument that Defendants cannot show Plaintiff's subjective mental state was reckless, as required under *Counterman*.

In finding that Plaintiff is likely to succeed on the merits based upon either of her two arguments, Plaintiff further requests pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure that this Court amend its findings to instead find that the balance of equities and public interest now favor Plaintiff and amend or alter the Court's judgment to instead grant Plaintiff's preliminary injunction. Alternatively, even if the Court still does not find that the balance of equities and public interest now favor Plaintiff, the Plaintiff still requests pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure that this Court amend its findings and alter the Court's judgment

to instead grant Plaintiff's preliminary injunction because the first two factors sufficiently weigh in Plaintiff's favor.

## Argument

### I. The Court must make additional findings and rule on whether Plaintiff's primary argument that her statements were not true threats is likely to succeed on the merits.

In Plaintiff's Brief in Support of her Motion for Preliminary Injunction, Plaintiff first argued that she was likely to succeed on the merits because her statements were not true threats, and next argued, separately, that she was also likely to succeed on the merits because she did not have a subjective *mens rea* of recklessness. [Doc. 44 at 7-12]. As Plaintiff explained:

> Defendants can only justify the violation and punishment of Plaintiff for her speech if her statements are unprotected by the First Amendment as "true threats" *and* if Defendants have shown that she had a subjective *mens rea* of recklessness in making those statements.

[*Id.* at 7 (emphasis in original)]. Likewise, in Plaintiff's Reply Brief, she again explained:

> Defendants incorrectly state that "If *Counterman* does not apply to university disciplinary proceedings, then Plaintiff's First Amendment claim lacks a viable legal framework." [Doc. 45 at 12]. Rather, even if *Counterman* does not apply, Plaintiff's statements still were not true threats.

[Doc. 46 at 5]. The independence of these two separate arguments was also set forth in Plaintiff's Amended Complaint:

> Even if any of Plaintiff's statements to 988 constituted true threats, they were still protected under the First Amendment…[because] Plaintiff thus had no subjective understanding of any potential threatening nature of her speech and did not consciously disregard a substantial risk that her communication/speech would be viewed as threatening violence or would ever be reported to OUHSC.

[Doc. 35 ¶¶ 43-48].

These two separate arguments constitute completely independent grounds upon which Plaintiff can succeed on the merits. Had the Court found that Plaintiff was likely to succeed on the merits based upon either one of those grounds, then the Court would not have had to make a finding as to the other ground. For example, if the Court found that Plaintiff was likely to succeed on the merits of her secondary argument that she did not have a subjective *mens rea* of recklessness, then the Court would not necessarily need to make a finding on Plaintiff's primary argument as to whether her statements constitute true threats since Plaintiff would likely succeed on the merits either way based upon her secondary argument. But because the Court denied Plaintiff's Motion for Preliminary Injunction, the Court was required to make a finding as to each separate ground upon which Plaintiff could succeed on the merits since Plaintiff might succeed on the other ground not ruled upon. See Fed. R. Civ. Pro. 52(a)(2) ("In granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action.").

Therefore, Plaintiff requests pursuant to Rules 52(a)(2), 52(b), and 59(e) that this Court make additional findings as to Plaintiff's primary argument, and find that Plaintiff is likely to succeed on the merits of her primary argument that her statements did not constitute true threats as set forth in Plaintiff's briefs [Doc. 44 at 7-11; Doc. 46 at 5-6; see also Doc. 35 ¶¶ 43-48].

## II. The Court must reconsider and amend its findings and ruling on whether Plaintiff's secondary argument is likely to succeed on the merits.

This Court found that Plaintiff was not likely to succeed on the merits because (1) a statement Plaintiff made to the 988 mental health crisis line "calls into question whether she possessed the requisite intent" for punishing true threats, and (2) "Plaintiff's speech caused

tangible disruption." [Doc. 48 at 6-7]. These are improper grounds for the Court to rely on for two reasons: first, the Defendants never raised these arguments and they are thus deemed waived; and second, the Court did not have the benefit of briefing to fully understand and determine that those grounds are incorrect.

**a. The Court cannot raise arguments *sua sponte* on behalf of Defendants.**

The U.S. Supreme Court has explained:

> In our adversarial system of adjudication, we follow the principle of party presentation. The parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present. To put it plainly, courts call balls and strikes; they don't get a turn at bat.

*Clark v. Sweeney*, 146 S.Ct. 410, 412 (2025) (per curiam) (internal quotation marks and citations omitted).

In *Clark*, a petition for habeas corpus asserted that trial counsel was ineffective for not seeking to *voir dire* the entire jury to ensure that no juror was tainted by another juror's unauthorized crime-scene visit. *Id.* The district court denied the petition, but the Fourth Circuit reversed on grounds separate from what the habeas petition asserted, concluding instead that the "trial was marred by a 'combination of extraordinary failures from juror to judge to attorney' that deprived Sweeney of his right to be confronted with the witnesses against him and his right to trial by an impartial jury." *Id.*

Even though some of those grounds might broadly relate to ineffective assistance of counsel securing an impartial jury and a fair trial, the U.S. Supreme Court reversed and held that the Fourth Circuit abused its discretion because the Fourth Circuit "devised a new [claim]" for the party and thus "transgressed the party presentation principle by granting relief on a claim that [was] never asserted

and that the [opposing party] never had the chance to address." *Id.* The Court directed the Fourth Circuit on remand to solely "analyze the ineffective-assistance claim that [was] asserted." *Id.* at 413.

In this case here, Defendants never raised either of the two grounds upon which the Court based its finding that Plaintiff was unlikely to succeed on the merits. The Court first pointed to a comment Plaintiff made to a 988 counselor and stated:

> Plaintiff's own statements during the May 1 follow-up call, in which she admitted that she "[s]ure as hell did" experience "harmful thoughts or anything like that" during her first phone call, directly contradict her testimony at the disciplinary hearing. Amend. Compl. Ex. 9 at 8–9. This inconsistency calls into question whether she possessed the requisite intent at the time she made the statements to the 988 operator during the April 27 phone call.

[Doc. 48 at 6]. But *nowhere* in Defendants' Response [Doc. 45], nor even in their Brief and Reply in Support of their Motion to Dismiss [Doc. 36; Doc. 42], did they ever mention that statement or even claim that any of Plaintiff's statements to 988 contradict her testimony or establish a reckless *mens rea* in such a way. Instead, Defendants only claimed that Plaintiff had a reckless *mens rea* based upon the words in the alleged threatening statements themselves (not upon other statements allegedly indicating such a reckless mental state) and upon her general awareness of a duty to warn [Doc. 45 at 6-8], which Plaintiff explained was not met in this situation and that she therefore never would have expected 988 to report her statements to the University [Doc. 46 at 4-5].

Next, the Court claimed Plaintiff's speech caused a disruption which would allow Defendants to punish her:

> Defendants raise an alternative theory that the University "possess[es] an inherent right to discipline students." Resp. at 4. Courts have repeatedly held that speech that materially disrupts the functioning of a school is not protected under the First Amendment. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513

> (1969) (student expression may be limited if it materially disrupts school operations); *Mahanoy Area Sch. Dist. v. B. L.*, 594 U.S. 180, 188 (2021) (noting "several types of off-campus behavior that may call for school regulation" including "threats aimed at teachers or other students"); *Slaughter v. Brigham Young Univ.*, 514 F.2d 622, 626 (10th Cir. 1975). Here, it is undisputed that Plaintiff's speech caused tangible disruption. Nonessential staff were sent home, access to the Student Union Building was restricted, and an optional graduation event for seniors was cancelled. Amend. Compl. ¶ 20; Resp. at 4.

[Doc. 48 at 6-7]. But again, *nowhere* in Defendants' Response [Doc. 45], nor even in their Brief and Reply in Support of their Motion to Dismiss [Doc. 36; Doc. 42], did they ever claim that they punished or could punish Plaintiff because of any disruption that her speech caused. Defendants never once cited to either *Tinker* or *B. L.*, and Defendants' general statement that "Universities possess an inherent right to discipline students" [Doc. 45 at 4 (citing *Slaughter*, 514 F.2d at 626)] in no way raised any argument that Plaintiff's speech was punishable under *Tinker* due to any disruption it caused.

Rather, Defendants' argument was simply that courts should "refrain from second-guessing the disciplinary decisions made by school administrators," and that this "institutional deference" is to be "[l]ayered on top of the[] threshold defenses" which Defendants made. [Doc. 45 at 4; see also *id.* at 8 ("The hearing panel…found a violation, a determination that is entitled to deference")]. Plaintiff responded to that argument [Doc. 46 at 2], and the *Slaughter* case, which Defendants cited, involves a private university and a claim based "upon contract theory alone" in contesting a student's expulsion due to listing a professor as a coauthor without the professor's knowledge, consent, or participation—not based upon the First Amendment or any disruption. 514 F.2d at 623-24. Defendants never stated anything anywhere about a disruption being the grounds or justification for punishing Plaintiff.

Just like the Fourth Circuit in *Clark*, this Court (presumably unintentionally) "devised a new [claim]" for Defendants and thereby "transgressed the party presentation principle by granting relief on a claim that [was] never asserted and that the [Plaintiff] never had the chance to address." *See Clark*, 146 S.Ct. at 412. Just as the Supreme Court directed the Fourth Circuit on remand to solely "analyze the . . . claim that [was] asserted," *id.* at 413, this Court should reconsider Plaintiff's likelihood to succeed on the merits based solely on the claims and defenses which were raised by the parties.

**b. The two grounds this Court relied upon were not raised by Defendants and are therefore deemed waived.**

In the Order denying Defendants' Motion to Dismiss in part, this Court "decline[d] to develop Defendants' argument for them as to whether…trial-witness immunity should be expanded to [a] materially different context" because of Defendants' "cursory treatment" of that defense in their Motion. [Doc. 47 at 14]. This Court explained:

> the Court need not consider Defendants' argument because it was raised only in a perfunctory and undeveloped manner. *See Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are *deemed waived*"); *Beckham Cnty. Rural Water Dist. No. 3 v. City of Elk City*, No. CIV-05-1485-F, 2014 WL 12818160, at *13 (W.D. Okla. Mar. 28, 2014) ("[T]he court declines to undertake the research, to say nothing of the advocacy, necessary to support" the undeveloped contentions"). Here, Defendants devote only a few sentences to the issue and rely solely on *Briscoe v. LaHue*, 460 U.S. 325 (1983) without meaningfully explaining why its rationale should extend to an internal disciplinary proceeding. Mot. to Dismiss at 12.

[Doc. 47 at 13 (emphasis added)]. Just as that undeveloped argument was deemed waived by Defendants in their Motion to Dismiss, these two arguments which Defendants never even raised at all should be deemed waived even more so.

Further, as for the *Tinker* disruption argument, Defendants never previously claimed that they suspended Plaintiff because her speech caused any disruption at the school, and it is too late for Defendants to now raise a new justification like that. The government cannot punish people in violation of the Constitution, and then hope it gets lucky and finds facts or comes up with a valid rationale after the fact to justify the punishment if it ever gets sued. The U.S. Supreme Court rejected such an attempt in *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407 (2022).

In *Kennedy*, a public high school disciplined a football coach because he knelt at midfield after games to offer a quiet prayer of thanks. *Id.* at 2415. The school justified its reasoning at the time solely on Establishment Clause grounds, because it mistakenly thought allowing Coach Kennedy to visibly pray could lead a reasonable observer to conclude that the school endorsed Coach Kennedy's religious beliefs. *Id.* at 2416, 2420. But after being sued, the school added in a different justification for punishing Coach Kennedy under *Tinker* due to the disruption caused, as the Court explained and rejected:

> Failing under its coercion theory, the [School] District offers still another backup argument. It contends that it had to suppress Mr. Kennedy's protected First Amendment activity to ensure order at Bremerton football games. See also *post*, at 2434-2435, 2437-2439, 2439-2440, 2452-2453 (SOTOMAYOR, J., dissenting). But the [School] District never raised concerns along these lines in its contemporaneous correspondence with Mr. Kennedy. And unsurprisingly, neither the District Court nor the Ninth Circuit invoked this rationale to justify the [School] District's actions. Government justifications for interfering with First Amendment rights must be

> genuine, not hypothesized or invented *post hoc* in response to litigation.

*Id.* at 2432 n.8 (cleaned up). The dissent further confirmed the majority's stance on this:

> The Court [majority] also ignores the severe disruption to school events caused by Kennedy's conduct, viewing it as irrelevant because the Bremerton School District (District) stated that it was suspending Kennedy to avoid it being viewed as endorsing religion. Under the Court's analysis, presumably this would be a different case if the [School] District had cited Kennedy's repeated disruptions of school programming and violations of school policy regarding public access to the field as grounds for suspending him. As the [School] District did not articulate those grounds, the Court assesses only the District's Establishment Clause concerns.

*Id.* at 2434 (Sotomayor, J., dissenting). Thus, even though the dissent notes that "Kennedy's conduct may have raised other concerns regarding disruption of school events or misuse of school facilities that would have separately justified employment action against Kennedy," *id.* at 2453 (Sotomayor, J., dissenting), such arguments and justifications were waived because "the [School] District never raised concerns along these lines *in its contemporaneous correspondence with Mr. Kennedy*" when it warned and disciplined him prior to his lawsuit, *id.* at 2432 n.8 (emphasis added); *see also Fox v. Washington*, 949 F.3d 270, 283 (6th Cir. 2020) (directing that on remand, the state department of corrections "will be limited to raising the justifications it cited at the time it made the decision to deny plaintiffs' request for recognition of [their religion]").

Just as the school district in *Kennedy* could not raise a new argument based upon a substantial disruption under *Tinker* to justify its punishment of Coach Kennedy after it had already punished him on the basis of other grounds and had been sued, neither can Defendants raise that or any other new argument or justification here.

Because this Court found no grounds other than these two as a basis for finding that Plaintiff is not likely to succeed on the merits of her secondary argument, and because those two grounds

are deemed waived and no other grounds suffice, this Court should amend or alter its findings to instead find that Plaintiff is likely to succeed on the merits of her secondary argument.

**c. The two grounds which the Court raised *sua sponte* and relied on without the benefit of briefing do not indicate or establish that Plaintiff is not likely to succeed on the merits.**

Even if those two grounds which this Court raised could be considered, they fail to indicate that Plaintiff is not likely to succeed on the merits of her secondary argument, which might be why Defendants thought these were not valid arguments worth raising.

**i. The Plaintiff's comment about having "harmful thoughts" does not indicate or establish a reckless *mens rea*.**

In *Counterman*, the Supreme Court made clear that the burden of proof is on the government to show the speaker's reckless mental state: "*the State must prove* in true threats cases that the defendant had some understanding of his statements' threatening character." 600 U.S. at 73 (emphasis added). Specifically, "[*t*]*he State must show* that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id.* at 69 (emphasis added). The Court acknowledged that to "condition liability *on the State's showing* of a culpable mental state…comes at a cost: It will shield some otherwise proscribable (here, threatening) speech because the State cannot prove what the defendant thought. But the added element reduces the prospect of chilling fully protected expression." *Id.* at 75 (emphasis added). Thus, the lack of a reckless *mens rea* is not an affirmative defense which must be raised by the speaker, but it is an element which must be established *by the government* at or before the time of punishment, not afterwards or *post hoc* in response to litigation. Again, "[g]overnment justifications for interfering with

First Amendment rights must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Kennedy*, 142 S.Ct. at 2432 n.8 (cleaned up).

Rather than establishing that Plaintiff had a reckless *mens rea*, the University established the opposite and its Hearing Panel concluded "that the testimony and documentary evidence showed that [Plaintiff] was in an emotional crisis, and she was using the tools available to her to stay safe" [Doc. 35 ¶ 35]—not to make threats. However, this Court raised the argument that

> Plaintiff's own statements during the May 1 follow-up call, in which she admitted that she "[s]ure as hell did" experience "harmful thoughts or anything like that" during her first phone call, directly contradict her testimony at the disciplinary hearing. Amend. Compl. Ex. 9 at 8–9. This inconsistency calls into question whether she possessed the requisite intent at the time she made the statements to the 988 operator during the April 27 phone call.

[Doc. 48 at 6].

But Plaintiff's comment to 988 does not indicate a reckless *mens rea* or contradict her testimony at the University's disciplinary hearing. Plaintiff has never denied that she had harmful thoughts during her first call to 988 on April 27th. She testified that she was having a "mental breakdown," "panic attacks," "thoughts of wanting to hurt [her]self and a lot of frustration with the school at the time." [Doc. 35 ¶ 31]. But simply acknowledging that she had "harmful thoughts" during a past emotional crisis does not indicate that her statements were true threats or that she consciously disregarded a substantial risk that her communications would be viewed as threatening violence. Someone can even express their "harmful thoughts" to a counselor without having any subjective awareness that those statements might be misinterpreted as threats. And having "harmful thoughts" of wishing someone was dead, as 988 claimed Plaintiff did [*id.* ¶ 27], is not a threat to commit an act of unlawful violence, as even Defendant Schofield understood and acknowledged, as he stated:

"saying [']I wish someone was dead,['] even though that is ugly and not right to say, it's not…a threat…it's not hate speech, it's free speech" [*id.* ¶ 10].

Thus, Plaintiff's acknowledgement to 988 on May 1st that she had "harmful thoughts" during her previous call on April 27th does nothing to indicate or establish a reckless *mens rea*, and it is entirely consistent with her testimony to the University's Hearing Panel, which knew that 988 had reported to Schofield that Plaintiff had "thoughts of harm" [*id.* ¶ 27; Doc. 35-14 at 41], and yet still concluded that the "panel did not find compelling evidence to believe that [Plaintiff] used the word 'kill' *or implied the word 'kill' at any time*" [Doc. 35 ¶ 35 (emphasis added)]. Perhaps this is why Defendants did not think this was a valid argument worth raising. Regardless, Defendants failed to establish that Plaintiff consciously disregarded a substantial risk that her communications with 988 would be viewed as threatening violence.

### ii. *Tinker* does not apply to Universities, and even if *Tinker* did, there was no substantial disruption in this case.

For public elementary and secondary schools, the Supreme Court has permitted limited restrictions on otherwise protected speech of students. *Tinker*, 393 U.S. at 513-14 (student speech may be restricted where it materially and substantially disrupts the work and discipline of the school, or officials reasonably forecast such disruption). But the Court has not extended *Tinker*'s disruption doctrine to adult college students' extracurricular speech, and has never held that schools have the disciplinary jurisdiction to punish adult students for speech to off-campus medical providers.

Rather, the Supreme Court has long ago recognized that "the precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large," *Healy v. James*,

408 U.S. 169, 180 (1972), as they do in elementary and secondary schools under *Tinker*'s disruption doctrine. The Supreme Court has more recently explained that *Tinker*'s disruption doctrine is based on the elementary and secondary schools standing *in loco parentis* for minor children. *Mahanoy Area Sch. Dist. v. B. L.*, 141 S.Ct. 2038, 2044-45 (2021). That rationale does not apply for adults in college and even less for older adults in professional or graduate schools.

It does not appear that the Tenth Circuit has addressed whether *Tinker*'s disruption doctrine applies to colleges. While the Tenth Circuit analyzed *Tinker*'s disruption doctrine in a college context in *Thompson v. Ragland*, 23 F.4th 1252, 1259-60 (10th Cir. 2022) (finding no substantial disruption), the applicability of *Tinker*'s disruption doctrine was assumed and asserted by the plaintiff-student in that case, *Thompson v. Ragland*, No. 21-1143, 2021 WL 2521636, at *9-10, 12 (10th Cir. June 10, 2021) (Appellant's Opening Brief), and was thus not questioned or ruled on by the court, but was assumed. *See Olivier v. City of Brandon*, 607 U.S. ___, 2026 WL 783725, No. 24-993 (Mar. 20, 2026) (slip op., at 3-4 n.2, 5 n.3) (noting that where the parties proceed on an incorrect legal premise, the Court "treat[s] any contrary argument as forfeited and proceed[s] in the same way" under the parties' assumption).

Even assuming that *Tinker*'s disruption doctrine does apply to colleges and graduate school programs, Defendants have forfeited and waived such a justification as explained above, and there was no substantial disruption or reasonable prediction of such caused by Plaintiff's confidential speech to off-campus mental health counselors which would "meet *Tinker*'s demanding standard." *See B. L.*, 141 S.Ct. at 2048.

After Plaintiff's initial call to 988 and 988's report of that call to the University on Saturday, April 27th, Plaintiff had been on campus for three days without any incident, concern, or disruption.

[Doc. 35 ¶¶ 10, 16, 20, 29]. The University allowed Plaintiff to return after a one-year suspension, and Plaintiff has been on campus and in good standing for this entire school-year without any incident, concern, or disruption. [*Id.* ¶¶ 1, 38; Doc. 44-1 ¶ 1; Doc. 45-2 ¶ 5 (Dean's Letter states Plaintiff "has performed well since her return to the program")]. Thus, there was no reasonable forecast of a substantial disruption due to Plaintiff's speech.

There was no actual disruption either. After the follow up phone call from 988 to Plaintiff at the instigation of Defendant Schofield on May 1st (four days after the initial 988 call), the University and/or Michael Harrington, who was the Chair of the Behavioral Intervention Team and the OUHSC Director of Student Affairs, sent nonessential OUHSC Student Affairs staff home from the Student Union building, restricted access to that building, and cancelled an optional graduation event for seniors to take pictures that evening near the building, but the University did not close down campus or send students home, and Kate Stanton (the person seen as the primary subject of Plaintiff's statements) still remained on campus. [Doc. 35 ¶ 20]. That is not a sufficient substantial disruption under *Tinker*, and that disruption was not caused by Plaintiff, but was caused by Defendant Schofield having 988 elicit additional statements from Plaintiff and by Harrington's significantly distorted, mischaracterized, exaggerated, and inaccurate report of Plaintiff's statements, as Harrington falsely claimed that Plaintiff "indicated a plan" of "coming to campus and killing the administration." [*Id.*].

In *Mahanoy Area Sch. Dist. v. B. L.*, the U.S. Supreme Court held that school officials violated the First Amendment when they suspended a high school student for a year from the cheerleading team in response to the student having sent statements to her friends on social media while outside of school, expressing her anger and frustration with the school. 141 S.Ct. at 2042-43. Even though the student's social media posts were then shared with others, and "several cheerleaders and other

students approached the cheerleading coaches 'visibly upset' about B. L.'s posts," and the school's "discussion of the matter took, at most, 5 to 10 minutes of an Algebra class 'for just a couple of days,'" the Court found "no evidence in the record of the sort of 'substantial disruption'" which would "meet *Tinker*'s demanding standard" to justify the school's disciplinary action. *Id.* at 2043, 2047-48.

In *Thompson v. Ragland*, the Tenth Circuit held that there was no substantial disruption caused by a university student sitting on the floor of two classes and sending an email expressing her dissatisfaction with the professor's performance and encouraging classmates to submit honest reviews about the class and the professor, even though the university claimed that the student's efforts to encourage other students to give negative evaluations would disrupt the professor's career and her relationship with her students, as well as the university's efforts in employing faculty to conduct the class. 23 F.4th at 1259-60.

Like the minor disruptions in *Thompson* and *B. L.*, the one-time, partial day restriction of access to and around one building does not constitute a "substantial disruption of or material interference with school activities." *See Tinker*, 393 U.S. at 514. And any disruption was caused by the unreasonable actions of Harrington and Defendant Schofield—not by Plaintiff.[2] As with the

[2] This does not mean that Defendants could not have taken certain safety measures, such as temporarily restricting Plaintiff from campus until they could clarify with Plaintiff and 988 exactly what was said and assess if there was any real risk or threat, and then implement any necessary safety precautions. But immediately and simply disciplining Plaintiff for her speech violates the First Amendment. *See Lavine v. Blaine School Dist.*, 257 F.3d 981, 983, 992 (9th Cir. 2001) (upholding temporary emergency removal of student from high school based upon what the school perceived was an implied threat of violent harm to the student and others until the school could determine that the student was no longer a threat, but also finding that the school violated the First Amendment by placing and maintaining negative documentation of the incident in the student's record because the "school need not permanently blemish [the student's] record and harm his ability to secure future employment" after the perceived threat had subsided and the student returned to classes, and thus

previous ground discussed above, perhaps part of this is why Defendants did not think this was a valid argument worth raising.

### III. The Court should reconsider and alter or amend its findings on the third and fourth preliminary injunction factors if Plaintiff is likely to succeed on the merits.

Plaintiff's likelihood of success on the merits of her First Amendment claim, changes the calculation and analysis of the third and fourth preliminary injunction factors. For a preliminary injunction based upon a constitutional violation, the first factor weighs more than the others. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ("in First Amendment cases, the likelihood of success on the merits will often be the determinative factor"); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) ("these are factors to be balanced, not prerequisites to be met"). This is because "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1254 (10th Cir. 2024) (internal quotation marks omitted).

And, as previously explained in Plaintiff's Reply Brief, Defendants' alleged harm is conditional and only potentially results if the preliminary injunction is reversed. [Doc. 46 at 9-10]. But even then, any potential reputational damage to the University is unlikely since the University did not choose to hide or willfully fail to disclose a student-violation, and only acted as required by a court Order.

But even if the Court finds that the third and fourth factors still weigh in Defendants' favor, Plaintiff should still be granted a preliminary injunction. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) (finding that the fourth preliminary injunction "factor is, at most, neutral" in that

---

"affirm[ed] the district court's injunction prohibiting the placement or maintenance of any such negative documentation in [the student's] file.")

case, but that "[o]n balance, the preliminary injunction factors favor the grant of preliminary relief" in enjoining a university student's suspension from school).

**Conclusion**

For the reasons set forth, the Court should grant Plaintiff's Motion to Reconsider certain findings and the judgment of the Order denying Plaintiff's motion for a preliminary injunction [Doc. 48] and find that Plaintiff is likely to succeed on the merits of her First Amendment claim under both her primary and secondary arguments, that the balance of equities and the public interest favor the Plaintiff, and thus grant the Plaintiff's requested preliminary injunction [Doc. 43].

s/ Rand C. Eddy
Rand C. Eddy, OBA# 11822
Eddy Law Firm, P.C.
*Attorney for Plaintiff*
Participating Attorney for
The Rutherford Institute
3644 Rolling Lane Circle
Midwest City, Oklahoma 73110
Tel: (405) 203-6675
rand@eddylawok.com

AND

s/ Sawmon Y. Davani
Sawmon Y. Davani, OBA# 34515
Davani Law, PLLC
*Attorney for Plaintiff*
Participating Attorney for
The Rutherford Institute
2405 White Oaks Drive
Norman, OK 73071
Tel: (405) 414-5913
Facsimile (972) 584-1599
sawmon@davanilawpllc.com

## CERTIFICATE OF MAILING

I hereby certify that, on the 10th day of April 2026, a copy of the foregoing was filed with the Court using the ECF system, which sent electronic notification to all counsel of record.

s/ Rand C. Eddy
Rand C. Eddy